[No. 4,155.]

SAMUEL BRANNAN *v.* JOSEPH MECKLENBURG ET AL.

OPENING A PUBLIC HIGHWAY.—If a statute for opening public roads requires a petition for opening the road to be filed with the Board of Supervisors, and the Board to appoint viewers, who are to view the proposed location, and decide whether such proposed location is required for the public convenience, and report the same to the Board, the viewers must concur with the petitioners as to the location of the entire road petitioned for, or the Board of Supervisors have no jurisdiction to act. If the viewers report in favor of the location of a part only of the road petitoned for, the Board of Supervisors have no jurisdiction to open such part.

APPEAL from the District Court, Seventh Judicial District, County of Napa.

The complaint averred that the plaintiff owned land in the town of Calistoga, county of Napa, through which the road which was being opened passed, and that the defend-

ants were Supervisors of the county of Napa, and Road Master of Road District No. 9, in said county, in which district the proposed road was located. That under the provisions of an Act entitled "an Act to provide for the establishment, maintenance, and protection of public roads in Napa County," passed March 31, 1866, the plaintiff and nine others, on the 4th day of March, 1872, filed with the Clerk of the Board of Supervisors, a petition for the opening of a public road from the intersection of Washington street and Lincoln avenue, in the town of Calistoga, to the Phœnix Quicksilver mine, Pope Valley, a distance of about eight miles, passing by the south-east corner of the land of S. E. Baiseley. That the Supervisors thereupon appointed John Cyrus, Henry Omsley, and T. J. Dewoody, road viewers, to view and report on the proposed road. That said viewers proceeded to view the proposed road, and reported that only a portion of said proposed location was advisable, to wit, from the point of commencement to Baiseley's southeast corner, a distance of only about two miles. That on the 9th day of May, 1872, the Board of Supervisors confirmed the report of the viewers, and declared the proposed road as far as Baiseley's south-east corner a public highway, and denied the petition so far as the remainder of the road petitioned for was concerned. That on the 9th day of August, 1873, the Board of Supervisors directed the Road Master to open the road as far as Baiseley's south-east corner, and he was removing the fences and opening the road. An injunction was prayed for. The provisions of the statute, which bear on the case, will be found in the briefs of counsel. The defendants demurred to the complaint, the Court sustained the demurrer, and rendered judgment for the defendants. The plaintiff appealed.

*J. W. Winans,* for the Appellant.

Plaintiff, with others, petitioned for a road from Calistoga to Pope Valley, an important terminal point with which it was desirable that Calistoga should have communication. The petitioners prayed that the road should run alongside of plaintiff's land at Calistoga.

Section 5 of said Act prescribes that the road viewers shall view the proposed location, and decide whether it is required for public convenience. If, in their opinion, the prayer of the petitioners is reasonable, and the location is necessary to the public convenience, they are to survey the proposed location, and distinctly mark the commencement, courses, distances, and termination of said route, and report a plat and field notes of the survey. These duties apply to the proposed road as an entirety. The road viewers have no authority whatever to view, approve, locate, survey, or mark out, or report a plat or field notes of a part of the proposed road. They can only deal with it, and approve or reject it, as a whole. In the present case the road viewers usurped authority to view, and approve of, and survey, and mark, and report the plat and field notes of, a part of the proposed road, about one quarter of the whole, and run that through plaintiff's land for the convenience of a neighbor. By section 6, of said Act, the Supervisors are authorized to confirm the report of the road viewers, in whole or in part, but the report so to be confirmed is required to be a report in favor of the whole road, not a report in favor of a part of it. Under the provisions of the Act, the Supervisors, by confirming the report in whole, establish the whole road; by confirming it in part, they establish a part of it; but here they confirmed the report in whole, and yet undertook to establish only a part of the road petitioned for. By the statute, the discretion to shorten the road is vested in the Supervisors alone. Here such discretion was exercised, not by them, but by the road viewers, in whom no such discretion was vested.

The statute prescribed a mode by which appellant could be divested of his property, and it was therefore necessary that the mode so prescribed should be in every particular strictly followed. (*Trumpler* v. *Beverly*, 39 Cal. 490–491; *Sherman* v. *Buick*, 32 Cal. 256.)

*Thomas P. Stoney* and *R. Burnell*, for the Respondents.

The appellant does not insist that the Board of Supervisors have no authority, in any case, to establish as a high-

way a portion only of a proposed location; for the statute expressly provides that they may " establish said location or alteration, or as much thereof as they may deem advisable, as a public highway." (Act March 31st, 1866, Sec. 6.) But appellant contends that while the Board of Supervisors may, in a proper case, establish as a highway a portion only of a proposed location; yet, before the Board can do so, the whole of the proposed location must first have been decided and reported by the viewers to be advisable. If this is a fair and reasonable construction of the statute, it ends the controversy, because the road viewers did not report, in this case that the whole of the proposed location was advisable.

There can be no question that, under the provisions of the Act the viewers and the Board must concur in the opinion that the proposed location or portion thereof established is advisable, and that the Board cannot establish the whole or any portion of the route as a highway, unless the viewers shall have first reported in its favor. The theory of the law seems to be that to proceed, the Board must have the assent and approval of the viewers, while in deciding not to proceed they act without respect to the opinion of the viewers.

If then the judgment of the viewers is adverse to the whole location they need make no survey of the proposed road or any portion thereof, as the Board of Supervisors are powerless in such case to proceed a single step. For the same reason, if the viewers decide adversely to any portion of the route, they need not make any survey of that portion, for as to that portion the Board of Supervisors would have no authority to act in the face of the unfavorable report of the viewers. If the viewers report in favor of a portion only of the route and adversely as to the other portion, is there anything in the letter or spirit of the Act which forbids the Board to establish that portion as to which the judgment of the viewers and of the Board of Supervisors agree?

By the COURT:

The viewers are required "to view the proposed location * * * and decide whether such proposed location * * * is required for public convenience." (Sec. 5.) "If, in the opinion of the road viewers, * * * the location is necessary to the public convenience," they are to cause a survey of the proposed location to be made, etc. (Id.) It is clear that the statute intended that the mind of the petitioners upon the one hand, and of the viewers upon the other, should concur in respect to the propriety of the proposed location of the road—the entire road—mentioned and proposed to be established by the petition, and that, unless there be this concurrence of views between the petitioners and viewers, the Board should have no authority to proceed further upon the petition. In this case the petitioners and the viewers differed as to the propriety of establishing that portion of the road lying beyond Baiseley's. If the report in this respect is followed, as it was attempted by the Board in this instance, the result might be the *ex parte* establishment of a road, for the opening of which no resident tax-payers could be found to sign a petition in the first instance.

Judgment reversed and cause remanded, with direction to overrule the demurrer to the complaint.